**Carl HOLCOMB; Loretta Holcomb, Plaintiffs–Appellants,**

v.

**COLONY BAY COAL COMPANY; District 17, United Mine Workers of America; Local Union 9177, District 17, United Mine Workers of America, Defendants–Appellees.**

No. 87–2658.

United States Court of Appeals, Fourth Circuit.

Argued May 2, 1988.

Decided July 29, 1988.

Geary M. Battistelli (Beneke, Battistelli & Bremer, Wheeling, W. Va., on brief), for plaintiffs-appellants.

Charles L. Woody (Edward W. Rugeley, III, Spilman, Thomas, Battle & Klostermeyer, David J. Hardy, United Mine Workers of America, Charleston, W. Va., on brief), for defendants-appellees.

Before CHAPMAN and WILKINS, Circuit Judges, and GORDON, Senior District Judge from the Middle District of North Carolina, sitting by designation.

CHAPMAN, Circuit Judge:

Carl E. Holcomb filed suit against Colony Bay Coal Company, Local Union 9177 and District 17, United Mine Workers of America, alleging six counts arising from his discharge by Colony Bay: (1) wrongful discharge; (2) unlawful discriminatory practice; (3) tort of wrongful and retaliatory discharge; (4) injury delivered and intended by employer; (5) intentional infliction of emotional distress; and (6) breach of duty of fair representation by the union. Holcomb's wife, Loretta Holcomb, added a claim for loss of consortium. The district court granted summary judgment to Colony Bay and to the union. We affirm.

I

Holcomb was a bulldozer operator at Colony Bay's surface mining operation in Boone County, West Virginia. In June 1985, Holcomb filed a complaint under § 103(g) of the Federal Mine Safety and Health Act of 1977, codified at 30 U.S.C. § 813(g) (1982) ("Act"), alleging that Colony Bay was forcing him to work under hazardous conditions. While Holcomb claimed that the dust level in the cab of his bulldozer was too high, samples analyzed by the Mine Safety and Health Administration of the Department of Labor ("MSHA") indicated that the dust level was within the range of compliance. Holcomb continued to complain and two other samples also indicated the dust level was within compliance. In October 1985, Holcomb filed another § 103(g) complaint with MSHA. Again the dust level was determined to be within the range of compliance.

On November 7, 1985, Holcomb decided to leave work early, and asked his foreman to bring his paycheck. The foreman collected the check and drove to the area where Holcomb was working, but unable to traverse the area in his pickup truck, he parked at the edge and waited for Holcomb to drive his bulldozer over to pick up the check. After waiting about twenty-five minutes, the foreman left the area to confer with another worker who needed to leave work early. The foreman returned to Holcomb's area approximately thirty minutes later and found Holcomb unloading his equipment into his car. The foreman offered Holcomb his paycheck and Holcomb told the foreman to "stick it up your ass." Other words were exchanged and Holcomb took the paycheck and drove away.

The foreman went to the mine office and discussed the incident with the superintendent and two union representatives. The group decided to meet with Holcomb the following morning to resolve the problem. On the morning of November 8, 1985, the foreman, accompanied by two union representatives, drove to Holcomb's work site. They requested Holcomb to accompany them to the mine office for a meeting. Holcomb jumped off of his bulldozer and invited the foreman to "go at it" and "settle it right now." The foreman and union representatives returned to the mine office and related the incident to the superintendent. The superintendent directed the union representatives and two other foremen to urge Holcomb to attend the meeting. The union representatives spoke with Holcomb separately for more than twenty minutes, but Holcomb refused to attend the meeting. The group returned to the mine office without Holcomb.

The superintendent then placed a telephone call to the District 17 union field representative and told him about the problem. After speaking with the local representatives, the district representative asked the superintendent to grant Holcomb one more chance to attend the meeting. Two union representatives and two foremen again went to see Holcomb at the work site. Again they urged him to attend the meeting. They related to him that the district union representative said he should attend the meeting. When Holcomb refused, one of the foreman ordered Holcomb to attend the meeting. Holcomb's immediate foreman explained to him that if he did not attend the meeting, he would be suspended subject to discharge. Holcomb refused to attend the meeting and demanded his suspension in writing. The superintendent wrote a letter of suspension with intent to discharge, which was delivered to Holcomb.

Holcomb grieved pursuant to the National Bituminous Coal Wage Agreement of 1984 ("Wage Agreement"), stating that he was unjustly discharged. The matter proceeded to arbitration. During arbitration, the union argued that Holcomb did not attend the meeting because "the work place was a hostile environment and [he] felt that he should not have to go to a meeting with so many supervisors and people as he was afraid for his own safety." The arbitrator considered a number of "just cause concepts in discipline" presented by the union and decided that Colony Bay had complied with each item. The arbitrator was then left with the final question "whether the conduct of the employee was defensible and the discipline penalty just?." The arbitrator determined that Holcomb's conduct was unacceptable and it was his responsibility to follow the directions of his supervisors and grieve later. Therefore, the arbitrator determined that Holcomb's conduct was insubordinate and that termination was an appropriate penalty under the guidelines of the Wage Agreement.

Holcomb argues that the district union representative never met with him during the preparation stages prior to arbitration in an attempt to resolve the grievance or discuss strategy concerning the arbitration. This forms the basis for Holcomb's complaint that the union "arbitrarily, capriciously and in bad-faith breached their duty to fully and fairly represent [him] at the arbitration proceeding." The union asserts that Holcomb was represented adequately at the arbitration hearing by District 17.

On February 26, 1986, after his grievance was denied by the arbitrator, Holcomb filed a complaint with the MSHA alleging that his discharge resulted from activities protected by § 105(c) of the Federal Mine Safety and Health Act of 1977. Holcomb alleged that he had been the victim of a continual pattern of discrimination because of his safety concerns, which culminated in his unjust termination. When Holcomb received notice of the hearing on his MSHA complaint, he sought assistance from District 17's legal counsel. District 17's counsel reviewed Holcomb's case and informed Holcomb that he could not take the case forward because, in his judgment, it could not be won. Several union representatives attended the MSHA hearing with Holcomb, but Holcomb did not ask them to testify.

The Administrative Law Judge ("ALJ") who handled the complaint found that Holcomb failed to establish a *prima facie* case of discrimination. The ALJ concluded that even if Holcomb could prove a *prima facie* case of discrimination, Colony Bay would have terminated Holcomb for verbal abuse of his foreman and his repeated refusal to attend a company-union meeting, actions that are unprotected by the Act. Holcomb then filed this suit in the district court.

The district court disposed of the case on motions for summary judgment made by Colony Bay and the union. Responding to arguments made in Holcomb's brief opposing summary judgment, the district court held: (1) the arbitrator's decision was drawn from the essence of the labor contract and is therefore proper under *Clinchfield Coal Co. v. District 28, United Mine Workers of America*, 720 F.2d 1365 (4th Cir.1983); (2) Holcomb failed to exhaust his administrative remedies with regard to his MSHA claim; (3) Holcomb's discrimination

claim should have been settled through the Wage Agreement; (4) Holcomb's claims for the tort of retaliatory discharge, intentional infliction of emotional distress, and a statutory action for injuries deliberately intended by an employer under West Virginia law are not allowed because they are duplicitous and stem from the allegation of wrongful discharge, therefore the merits of those state claims have been undercut by the arbitrator's decision involving a common nucleus of facts upon which the state claims must draw their validity; (5) the statute of limitations has run on Holcomb's allegations against the union for unfair representation prior to December 24, 1985; and (6) the union met the standards of fair representation set forth in *Griffin v. International Union, United Automobile, Aerospace & Agricultural Implement Workers of America, UAW,* 469 F.2d 181 (4th Cir.1972).

## II

■ Review of arbitration awards by the courts is limited so as to further the federal policy of settling labor disputes privately without government intervention. An arbitration decision should not be overturned if it "draws its essence from the collective bargaining agreement." *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960); *Clinchfield Coal Co. v. District 28, UMWA,* 720 F.2d 1365 (4th Cir.1983). The Supreme Court recently reaffirmed this rule in *United Paperworkers International Union, AFL–CIO v. Misco, Inc.,* —— U.S. ——, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987), stating that

> courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rest on errors of fact or on misinterpretation of the contract.
>
> \* \* \* \* \* \*
>
> [A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced that he committed serious error does not suffice

to overturn his decision. Of course, decisions procured by the parties through fraud or through the arbitrator's dishonesty need not be enforced.

108 S.Ct. at 370–71.

Holcomb argues that a limited review is not proper in this case because of his allegations that the union breached its duty of fair representation. Holcomb also argues that the arbitrator failed to consider past conduct or past arbitral decisions and that the decision did not "draw its essence from the collective bargaining agreement." *Enterprise Wheel,* 363 U.S. at 597, 80 S.Ct. at 1361.

We find these arguments meritless. *Misco* clearly limits our review of this case. The arbitrator applied the Wage Agreement in evaluating whether just cause existed for Holcomb's termination. Holcomb's claim that the union breached its duty of fair representation is not, and could not be construed as, an allegation of fraud; nor has Holcomb alleged dishonesty on the part of the arbitrator. Therefore, *Misco* prevents us from disturbing the arbitrator's decision that termination was an appropriate penalty for Holcomb's actions under the collective bargaining agreement.

## III

■ Holcomb argues that the district court erroneously concluded that he failed to exhaust his administrative remedies with regard to his MHSA discrimination claim. The administrative remedies appear at 29 C.F.R. § 2700 *et seq.* (1987) and provide in pertinent part:

> Any person adversely affected or aggrieved by a Judge's decision or order may file with the Commission a petition for discretionary review within 30 days after issuance of the order or decision.

29 C.F.R. § 2700.70(a) (1987). Holcomb's novel contention is that this review procedure is permissive instead of mandatory; therefore, he was not required to petition the Federal Mine Safety and Health Review Commission for review of the ALJ's decision in order to exhaust his administrative remedies.

We reject this argument. Such a reading of the regulation would undermine the administrative process and prematurely involve the courts. As we have previously stated,

> [e]xhaustion is generally required as a matter of preventing premature interference with the agency processes, to afford the parties and the court the benefits of agency experience and expertise, to compile a record which is adequate for judicial review and to allow the agency to function efficiently and have an opportunity to correct its own errors. *Weinberger v. Salfi*, 422 U.S. 749, 765, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522 (1975).

*Eastern Band of Cherokee Indians v. Donovan*, 739 F.2d 153, 156 (4th Cir.1984). By filing this case in the district court before petitioning for review by the Commission, Holcomb attempted to circumvent the administrative process and thereby failed to exhaust his administrative remedies.

### IV

■ In *Griffin v. International Union, United Automobile, Aerospace & Agricultural Implement Workers of America, UAW, supra,* this court set out the following specific standards a union must meet to fulfill its duty of fair representation:

> First, it must treat all factions and segments of its membership without hostility or discrimination. Next, the broad discretion of the union in asserting the rights of its individual members must be exercised in complete good faith and honesty. Finally, the union must avoid arbitrary conduct.

469 F.2d at 183. This court has also stated that liability for unfair representation can only be imposed based on conduct which is arbitrary, discriminatory or in bad faith; negligence alone is not sufficient. *Wyatt v. Interstate and Ocean Transp. Co.,* 623 F.2d 888 (4th Cir.1980).

We agree with the district court's conclusion that the union has met the *Griffin* standards. Since Holcomb was unable to show the existence of a genuine issue of material fact on this issue, summary judgment was appropriate under *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

We have reviewed the remaining arguments presented by Holcomb and also find them meritless.

### V

■ While arguing that the arbitration decision did not draw its essence from the labor agreement during oral argument for this case, Holcomb's counsel stated that "in the award opinion of the decision there's no mention of just cause." In Holcomb's brief, his counsel acknowledges "that the arbitrator cites the 'pertinent contract language' of Article IA(d) SCOPE AND COVERAGE, *Management of The Mines* and Article XXIV(a) DISCHARGE PROCEDURE, *Just Cause Required* at the commencement of his discussion of the case," but then states that "there is no showing that he [the arbitrator] looked to the words 'just cause' in rendering and writing his *Opinion* in this case." Brief for Appellant at 8.

The Arbitrator's Opinion, however, is clearly based on just cause principles and indeed, contrary to Holcomb's counsel assertions in oral argument, the words "just cause" are specifically used by the arbitrator. Quoting from the Arbitrator's Opinion:

> The Union presented a paper calling for just cause concepts in discipline from the eighth annual arbitration seminar in Louisville, Kentucky. The Union pointed to the following items of due process.

The arbitrator considered the first six items in the discipline process and determined that each was complied with in this case. The arbitrator then wrote "That leaves us to the last item: whether the conduct of the employee was defensible and the discipline penalty just?." The arbitrator concluded that Holcomb's refusal to obey "a direct Company order when he had been informed of the consequences is insubordinate conduct subject to termination and is an appropriate penalty under the guidelines of ... the National Bituminous Coal Wage Agreement."

Holcomb's counsel misstated the record both in his brief and in oral argument in an attempt to mislead this court with regard to the content and import of the Arbitrator's Opinion. Therefore, Holcomb's counsel is charged with double costs in this case, pursuant to Fed.R.App.P. 46(c) and this court's Internal Operating Procedure 46.6a(3) and (4).

*AFFIRMED.*