**UPSHUR COALS CORPORATION, Plaintiff–Appellee,**

v.

**UNITED MINE WORKERS OF AMERICA, DISTRICT 31; United Mine Workers of America, Defendants–Appellants,**

**International Union; Jack Canpell; William W. Bennett, Jr.; Wilbert Dancy; Gary Replogle, Appellants.**

No. 90–1826.

United States Court of Appeals, Fourth Circuit.

Argued March 5, 1991.

Decided May 14, 1991.

As Amended June 3, 1991.

---

Judith Ann Scott, United Mine Workers of America, Washington, D.C., argued (Robert H. Stropp, Jr., United Mine Workers of America, Washington, D.C., Grant Crandall, Bradley J. Pyles, William D. Turner, Crandall & Pyles, Charleston, W.Va., on brief), for defendants-appellants.

Thomas J. Bender, Jr., Saul, Ewing, Remick & Saul, Philadelphia, Pa., argued (Kristine Grady Derewicz, Saul, Ewing, Remick & Saul, Philadelphia, Pa., Mark A. Carter, Smith, Heenan and Althen, Charleston, W.Va., on brief), for plaintiff–appellee.

Before PHILLIPS and NIEMEYER, Circuit Judges, and RESTANI, Judge, United States Court of International Trade, sitting by designation.

PHILLIPS, Circuit Judge:

This is an appeal from a decision vacating an arbitration award based upon an interpretation of the National Bituminous Coal Wage agreement of 1984 (1984 NBCWA). The arbitration board concluded that the 1984 NBCWA required appellee, Upshur Coals, to continue providing accrued health benefits to laid off employees even after the 1984 NBCWA had expired. The district court reversed the decision of the arbitration board, holding that Ups-hur's responsibilities ended with the expiration of the 1984 NBCWA. Because the arbitration award was entitled to great deference, and because we conclude that the decision of the arbitrators drew its essence from the agreement and was not in manifest disregard of the law, we now reverse.

## I

In 1984, Upshur Coals Corporation, a coal mine operator, and the United Mine Workers of America (UMWA), entered into a collective bargaining agreement known as the National Bituminous Coal Wage Agreement of 1984. This agreement provided, among other things, for health benefits for employees and laid off employees. Article XX, § (c)(3)(i), of the agreement stated:

Each signatory Employer shall establish and maintain an Employee benefit plan to provide, implemented through an insurance carrier(s), health and other nonpension benefits for its Employees covered by this agreement as well as pensioners under the 1974 Pension Plan and Trust.... The benefits provided by the Employer to its eligible Participants pursuant to such plans shall be guaranteed during the term of this Agreement by the Employer at levels set forth in such plans.

This Article went on to say that the benefits plans:

established pursuant to this agreement are incorporated by reference and made part of this Agreement, and the terms and conditions under which health and other nonpension benefits will be provided under such plans are as to be set forth in such plans.

The Benefit Plan for UMWA Represented Employees, which became effective on October 1, 1984 and was incorporated into Article XX, included an explicit provision for the continuation of insurance coverage for laid off employees. Article III.D.(1)(a).

The Benefit Plan provided that any employee laid off during the term of the agreement was entitled to receive continued health coverage, paid for by Upshur, for a fixed period after layoff. The plan

contained a specific provision detailing the length of time for which a laid off employee would continue receiving health insurance. The extent of this continued health insurance depended on how many hours the laid off employee had worked in the prior two years. An employee who had worked less than 500 hours in the prior two years was entitled to thirty days of insurance coverage after layoff; one with between 500 and 2000 hours logged would receive six months of coverage; and one who had worked upwards of 2,000 in the prior two years was entitled to twelve months of continued insurance.

On June 26, 1987, Upshur Coals terminated all its mining operations for economic reasons. By October 19, 1987, all employees represented by the UMWA were permanently laid off. Upshur provided the laid off workers with continued health coverage, pursuant to the agreement until the 1984 NBCWA expired. Upshur did not sign any subsequent wage agreement, however, and upon expiration of the 1984 agreement, it ceased providing the remaining health benefits due laid off employees.

In June 1988, the UMWA filed an unfair labor practice charge with the National Labor Relations Board, claiming that Upshur violated §§ 8(a)(1) and (5) of the National Labor Relations Act by discontinuing health coverage for laid off employees. In August 1988, the NLRB deferred further consideration of these charges when Upshur agreed to submit the dispute to arbitration.[1] A month later, District 31 of the UMWA submitted a request for Resolution of Dispute to the Trustees of the UMWA Health and Retirement Funds, the arbitrator explicitly designated in both the agreement and its attached Employer Benefit Plan.

On December 7, 1988, a manager of the UMWA Health and Retirement Fund wrote to Upshur, suggesting that the Trustees were likely to follow their precedents in two prior Resolutions of Disputes (ROD) in which the Trustees had interpreted both the 1981 and the 1984 NBCWAs as requiring former employers of laid off employees to continue providing contracted health benefits even after expiration of those agreements, despite the fact that the former employer had not signed the subsequent wage agreement. In the latter ROD, interpreting the 1984 agreement, the Trustees acknowledged that in *District 29, U.M.W.A. v. Royal Coal Co.*, 768 F.2d 588 (4th Cir.1985), the Fourth Circuit held that signatories of the 1984 agreement, that were not signing the subsequent agreement, were not obligated to continue providing health benefits to pensioners after the 1984 NBCWA expired. Pointing to an NLRB decision, *Coalite, Inc.*, 278 NLRB 293 (1986), as an example however, the Trustees noted that health benefits for laid off employees are not inherently identical to those for pensioners.

Upon receiving this letter suggesting that it would likely lose the arbitration, Upshur attempted to withdraw its consent to arbitration. Initially, it appears that the NLRB decided to revoke its decision to defer processing of the UMWA's unfair labor practice claim. When the Trustees decided to render a judgment in the dispute, notwithstanding Upshur's attempt to withdraw its willingness to submit to arbitration, however, the Regional Director of the NLRB exercised his discretion to withhold action on the unfair labor practice claim awaiting the conclusion of arbitration.

On September 13, 1989, the Trustees rendered their ROD opinion, concluding that Upshur was responsible for providing laid off employees health benefits for the full period promised in the contract. On December 11, 1989, Upshur filed suit in the District Court for the Northern District of

---

**1.** The 1984 NBCWA includes an arbitration provision which states:

Disputes arising under this Agreement with regard to the Employer benefit plan established in (c)(3) above shall be resolved by the Trustees. The Trustees shall develop procedures for the resolution of such disputes. Decisions of the Trustees shall be final and binding on the parties.

1984 NBCWA, Art. XX, § (e)(6). Likewise, the Employer Benefit Plan provided that "the Trustees of the UMWA Health and Retirement Funds will resolve any disputes ... to assure consistent application of the Plan provisions."

West Virginia, requesting that the court vacate the arbitration decision. The court granted the motion to vacate, holding that *Royal Coal* controlled, that pensioners and laid off employees were treated identically under the 1984 NBCWA, and that Upshur was under no obligation to provide further health benefits to laid off employees after the expiration of the agreement. The UMWA now appeals.

## II

■ The first issue is whether this is an appropriate juncture at which to review the decision of the district court. Upshur contends that we should withhold review of the district court's judgment until the NLRB resolves the UMWA's unfair labor practice claim. We disagree for two reasons. First, the unfair labor practice claim is separate and distinct from the contractual claims at issue here. The NLRB claim charges that Upshur violated Section 8(a)(1) and (5) of the Labor Management Relations Act, in that its elimination of health care benefits was in bad faith. The claim brought to arbitration and before us here, on the other hand, involves a matter of pure contractual interpretation. Since the purpose of arbitration is to provide speedy resolution of contractual disputes, we will not frustrate that intent by delaying this appeal. The matters before the arbitrator and the NLRB are fundamentally different and there is no reason for us to stall the quick resolution of arbitration dispute— particularly when the NLRB has itself decided to withhold processing of the unfair labor practice claim pending the result in this litigation.

In addition, resolving this claim now serves the interest in judicial economy. Since we conclude that the arbitrators' decision was within the legitimate scope of their powers, and therefore hold that Upshur must provide benefits under the terms of the contract, the UMWA need not continue its unfair labor practice claim. Therefore, addressing this contractual dispute now will reduce the overall workload of the administrative tribunal.

We are also troubled by the circumstances surrounding Upshur's attempt to withdraw consent to arbitration. Several months after having consented to arbitration, Upshur decided to withdraw its consent upon a receipt of a letter suggesting that it was likely to lose the arbitration. If we were to allow a party that suspects it will lose in arbitration to withdraw consent to arbitrate shortly before a decision is handed down, and further permit this action to delay judicial review, we would frustrate the purpose of arbitration, namely "the speedy resolution of labor disputes." *See Fortune, Alsweet & Eldridge, Inc. v. Daniel,* 724 F.2d 1355, 1357 (9th Cir.1983). We therefore move to the substance of the UMWA's appeal.

## III

■ The UMWA argues that the district court erred in granting Upshur's motion to vacate the arbitrators' award. The court held that, in finding Upshur responsible for continued health benefits, the arbitrators exceeded the scope of their authority. Since the question of whether an arbitrator exceeded the scope of his authority is a legal question, we review the matter *de novo. NCR Corp. v. I.A.M.E.W., Dist. Lodge No. 70,* 906 F.2d 1499, 1500 (10th Cir.1990); *see also Mutual Fire, Marine & Inland Ins. Co. v. Norad Reinsurance Co.,* 868 F.2d 52, 56 (3rd Cir.1989) (applying Federal Arbitration Act); *Moseley, Hallgarten, Estabrook & Weeden Inc. v. Ellis,* 849 F.2d 264, 267 (7th Cir.1988) (same). We are therefore required to stand in the shoes of the district court in considering whether the arbitrators here exceeded the scope of their authority.

■ An arbitrator's award is entitled to a special degree of deference on judicial review. As the Supreme Court explained in *United Paperworkers v. Misco,* 484 U.S. 29, 38, 108 S.Ct. 364, 371 98 L.Ed.2d 286 (1987).

> The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award

on the ground that the arbitrator misread the contract.

Although we may disagree with an arbitrator's interpretation of a contract, we must uphold it so long as it "draws its essence from the agreement." *United Steelworkers v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960); *Holcomb v. Colony Bay Coal Co.,* 852 F.2d 792, 795 (4th Cir. 1988). "As long as the arbitrator is even arguably construing or applying the contract" a court may not vacate the arbitrator's judgment. *Misco,* 484 U.S. at 38, 108 S.Ct. at 371. Consequently, "[a]n award may be overturned only if the arbitrator must have based his award on his own personal notions of right and wrong, for only then does the award fail to 'draw its essence from the collective bargaining agreement.'" *E.I. DuPont de Nemours & Co. v. Grasselli Employees Indep. Assoc.,* 790 F.2d 611, 614 (7th Cir.1986) (citations omitted).

 Not only is an arbitrator's fact finding and contract interpretation accorded great deference, but its interpretation of the law is accorded deference as well. A legal interpretation of an arbitrator may only be overturned where it is in manifest disregard of the law. *See American Postal Workers v. United States Postal Serv.,* 682 F.2d 1280, 1284 (9th Cir.1982). An arbitration award is enforceable "even if the award resulted from a misinterpretation of law, faulty legal reasoning or erroneous legal conclusion," *George Day Construction Co. v. United Brothers of Carpenters Local 354,* 722 F.2d 1471, 1479 (9th Cir.1984); *accord Local 771, I.A.T.S.E. v. RKO General, Inc.,* 546 F.2d 1107, 1113 (2d Cir.1977), and may only be reversed "when arbitrators understand and correctly state the law, but proceed to disregard the same." *San Martine Compania de Navegacion, S.A. v. Saguenay Terminals Limited,* 293 F.2d 796, 801 (9th Cir.1961).

## IV

 The district court held that the Trustees exceeded their authority as arbitrators on the ground that their decision was contrary to the holding of this court in *Royal Coal,* 768 F.2d 588. There we held that a mine operator that did not sign the 1988 agreement was not required to provide health benefits to retired and disabled coal miners beyond the expiration date of the 1984 agreement. The district court in this case reasoned that, since the contract language relied on in *Royal Coal* applied to both laid off employees and pensioners, Upshur was similarly not obligated to provide health benefits to laid off employees once the 1984 NBCWA expired. We disagree. The district court failed to take into account several differences between the treatment of pensioners and laid off workers in the agreement which could justify treating the two classes of individuals differently.

First, Article XX of the 1984 NBCWA specifically incorporates the terms of the Employer Benefit Plan into the agreement. The Employer Benefit Plan, in turn, lays out a specific formula and schedule with which to determine the extent of health benefits to which a laid off employee is entitled. The Plan contains no similarly specific formula and schedule for pensioners. In addition, those benefits guaranteed laid off workers are explicit and finite; those guaranteed pensioners continue for the duration of the pensioners' lifetimes.

Second, the arbitrators reasonably could have concluded that health benefits for laid off miners constituted deferred compensation, due regardless of the agreement's expiration date. Courts have held, for instance, that vacation pay, provided upon fulfillment of specific work requirements, can constitute deferred compensation, due even after expiration of a collective bargaining agreement. *See, e.g., Teamsters Local 688 v. John J. Meier Co.,* 718 F.2d 286 (8th Cir.1983); *Local Union No. 186, United Packinghouse Workers v. Armour & Co.,* 446 F.2d 610 (6th Cir.1971). Similarly, the Third Circuit has held that health benefits guaranteed disabled workers, tied to the disabled employees' length of service, constituted accrued compensation. *E.L. Weigand Div. v. NLRB,* 650 F.2d 463 (3d Cir.1981). Indeed, as the Supreme

Court has noted, the presence of a specific requirement of work before receipt of a benefit is "strong evidence" that the benefit was intended as a form of compensation for work already performed. *See Foster v. Dravo Corp.*, 420 U.S. 92, 99, 95 S.Ct. 879, 884, 43 L.Ed.2d 44 (1975) (discussing accrued vacation). The extent of a laid off employee's continued health benefits, under the 1984 NBCWA, was directly dependent on the number of hours worked during the prior two years. Thus, the arbitrators might have analyzed these benefits as a form of deferred compensation, still due even after the contract expired.

Finally, the arbitrators might have concluded that pensioners and laid off employees differed in that pensioners denied health benefits under *Royal Coal* are entitled to receive such benefits from the 1974 UMWA Benefit Plan and Trust. *See District 29, U.M.W.A. v. U.M.W.A. 1974 Benefit Plan & Trust*, 826 F.2d 280 (4th Cir. 1987). The arbitrators may have determined that the 1974 Benefit and Trust would not similarly provide laid off employees health benefits, if Upshur were relieved of its obligation to continue these benefits.[2] They might have then concluded that, since the contract entitled all workers promised continued benefits receipt of these benefits, and since the Benefit Plan and Trust did not provide for laid off employees, the contracting parties must therefore have intended that burden to fall on the former employer.

We do not and need not decide whether any of these analyses constitute the best or most accurate reading of the contract. We hold only that they are plausible readings of the agreement and that the arbitrators had some basis for distinguishing the treatment of laid off employees and pensioners. Consequently, under our deferential standard of review, we cannot say that the arbitration award failed to draw its essence from the agreement.

## V

Upshur contends, however, that the arbitrators erred in their interpretation of legal precedent. First, Upshur claims that the issue considered in *Royal Coal* was identical to the issue here and that the UMWA is therefore estopped from claiming that Upshur maintains any obligation to laid off workers. We disagree. The issues in *Royal Coal*, and the case at bar, are not identical. *Royal Coal* discussed a mine operator's obligations with respect to pensioners; it did not address an employer's obligations regarding laid off employees. As we have noted above, the terms under which pensioners and laid off employees receive continued benefits are fundamentally different.

Upshur next argues that the arbitrators relied on an inapposite NLRB decision, *Coalite, Inc.*, 278 NLRB 293 (1986), in manifest disregard for the law. Again, we disagree. In *Coalite*, the NLRB distinguished between the rights of pensioners and laid off employees under the 1981 NBCWA, stating that "benefits for employees in lay off status are not to be considered as being inextricably intertwined with benefits for pensioners and surviving spouses." Upshur contends that *Coalite* is inapplicable here, because *Coalite* involved a coal operator who was bargaining for a subsequent contract when the prior contract expired. Consequently, the coal operator was bound to maintain the status quo—providing continued health benefits—as a component of its duty to bargain in good faith. Upshur is certainly correct in arguing that *Coalite* did not provide any binding precedent for the arbitrators here. The ROD did not depend on *Coalite* as the basis for its result, however. Instead, the arbitrators merely pointed to *Coalite* as persuasive precedent for treating pensioners and laid off employees differently. It served as an example to show that the two groups are not "inextricably intertwined." Again, we may not agree that *Coalite* provided the ideal analogy for this case, but our task is simply to determine whether its use by the arbitrators constituted manifest disregard for the law. Again, we conclude that it did not.

---

**2.** The question of whether the 1974 UMWA Benefit Plan & Trust would, in fact, provide laid off employees with continued health coverage beyond the expiration date of the 1984 NBCWA is not before us and we explicitly do not reach that question here.

## VI

In conclusion, we hold that the arbitrators' award did not fail to draw its essence from the 1984 NBCWA. Likewise, we conclude that the award was not in manifest disregard of the law. The arbitrators' interpretation of the contract, and of this court's decision in *Royal Coal* may not have been correct, and we do not hold that if asked to interpret the contract *de novo*, we would reach the same conclusions as did the arbitrators. Instead, our decision reflects the commitment of the judiciary to support the process of arbitration. Labor arbitration serves the important goal of providing swift resolution to contractual disputes. Where parties have contracted to allow for arbitration, we will not substitute our judgment for that of the arbitrator. Unless the arbitrator's decision reflects his personal notions of right and wrong, or unless the arbitrator appears utterly to have failed to execute his duty to interpret the contract or the relevant law, the arbitrator's decision must stand. Since the arbitrators' decision here does not reflect any such flagrant violation of the broad authority conferred by contract, we hold that the arbitrators did not exceed their authority, and reverse the contrary decision of the district court.

REVERSED.