570 S.E.2d 577

**OFFICE OF LAWYER DISCIPLINARY COUNSEL, Petitioner,**

v.

**Glenn M. NICHOLS, an Active Member of the West Virginia State Bar, Respondent.**

No. 30690.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 4, 2002.

Decided Oct. 11, 2002.

Lawrence Lewis, Chief Lawyer Disciplinary Counsel, Amie L. Johnson, Lawyer Disciplinary Counsel, Office of Lawyer Disciplinary Counsel, Charleston, for the Petitioner.

Glenn M. Nichols, Pro Se.

PER CURIAM:

The petitioner, the Office of Lawyer Disciplinary Counsel (hereinafter referred to as the "OLDC"), seeks this Court's temporary

suspension of the law license of the respondent, Glenn M. Nichols (hereinafter referred to as "Mr. Nichols"), pending the outcome of ongoing disciplinary proceedings against Mr. Nichols.[1] OLDC has also requested that this Court appoint an attorney to act as trustee to protect the interests of Mr. Nichols' clients.[2] After reviewing the record in this matter, the Court opines that if the pending charges against Mr. Nichols are ultimately proven, they will clearly establish that he has engaged in a continuing pattern of inappropriate conduct warranting serious sanctions. Thus, this Court hereby temporarily suspends Mr. Nichols' law license pending the outcome of the ongoing disciplinary proceedings against him. We further rule that the previously entered order by Chief Judge Stucky, appointing an attorney to oversee the affairs of Mr. Nichols' clients, remain in full force pending the outcome of the disciplinary proceedings.

## I.

### FACTUAL HISTORY

In October of 2000, two separate ethical complaints were filed with the OLDC against Mr. Nichols. The first complaint was filed by Frank and Lorena Boggess, former clients of Mr. Nichols. In their claim, the Boggesses assert that in 1995 or 1996 they retained Mr. Nichols to file a lawsuit against a construction company that built their home. The Boggesses gave Mr. Nichols $75.00 as the filing fee for the complaint. Over the course of several years, Mr. Nichols led the Boggess family to believe that the lawsuit had been filed when, in fact, the suit had never been filed. Mr. Nichols at one point falsely informed the Boggesses that they had been awarded money from the lawsuit. In 1998, the Boggesses contacted the circuit court where the lawsuit was supposed to

have been filed. They were informed by the clerk's office that the case had never been filed. Subsequently, on October 23, 2000, the Boggesses filed an ethical complaint against Mr. Nichols with the OLDC.[3]

The second ethical complaint filed against Mr. Nichols was made by his former client, Arthur Cole. In 1997, Mr. Cole retained Mr. Nichols to represent him in matters pertaining to real property, including the filing of a lawsuit. During the course of the representation, Mr. Cole paid Mr. Nichols $7,250.00 in attorney's fees. He also gave Mr. Nichols $3,500.00 to pay a land surveyor. Mr. Nichols did not provide the legal services he was retained to perform, nor did he file the lawsuit. Nevertheless, Mr. Nichols repeatedly misrepresented to Mr. Cole that a suit had been filed. Additionally, Mr. Nichols failed to pay the land surveyor. In June, 2000, Mr. Cole first learned that Mr. Nichols had neither filed the lawsuit nor paid the land surveyor. On October 1, 2000, Mr. Cole filed an ethical complaint against Mr. Nichols with the OLDC.[4]

Apart from these two initial complaints pending against Mr. Nichols, the OLDC has received additional ethical complaints by other former clients of Mr. Nichols. On April 11, 2002, an ethical complaint was filed against Mr. Nichols by Linda Byrd, which is currently under investigation by the OLDC. Ms. Byrd alleged that she retained Mr. Nichols to represent her in an employment matter. According to Ms. Byrd, Mr. Nichols was given $5,000.00 as a retainer fee. Ms. Byrd has charged Mr. Nichols with failing to provide her information regarding her case; lying to her regarding interviewing a witness; and failing to provide an accounting of how the retainer fee was used.

---

1. Mr. Nichols failed to file a response brief in this proceeding.

2. This Court issued a previous order requiring the Honorable James C. Stucky, Chief Judge of the Circuit Court of Kanawha County, to appoint an attorney to act as trustee in overseeing the interests of Mr. Nichols' clients. We have been informed that Chief Judge Stucky has appointed a Trustee.

3. The OLDC filed a Statement of Charges against Mr. Nichols regarding the complaint filed by the Boggesses, which matter is pending.

4. The OLDC filed a Statement of Charges against Mr. Nichols regarding the complaint filed by Mr. Cole. This matter is also pending. Mr. Nichols has refunded Mr. Cole the $7,250.00 he received as attorney's fees and the $3,500.00 given to him to hire a land surveyor.

Another complaint was filed by Henry Jeffrey on April 16, 2002, who complains that Mr. Nichols was retained to file an uncontested petition for adoption. Mr. Nichols failed to file the petition. He repeatedly lied to Mr. Jeffrey that the matter was progressing in the courts.

Additionally, Mrs. Ernie Clark lodged an ethical complaint against Mr. Nichols on June 26, 2002. Mrs. Clark alleged that she retained Mr. Nichols in the mid–1990's to collect a debt of $50,000.00 that was owed to her. Over the course of several years, Mr. Nichols informed Mrs. Clark that a lawsuit had been filed in Putnam County to recover the money. However, on or about June 24, 2002, Mrs. Clark learned that no such lawsuit had been filed. On June 27, 2002, Mrs. Clark confronted Mr. Nichols about her discovery, and, during that confrontation, Mr. Nichols informed Mrs. Clark that the lawsuit had been filed in Kanawha County. Mrs. Clark then contacted the Kanawha County Circuit Clerk's office whereupon she learned that no lawsuit had been filed in Kanawha County.

Lastly, on June 29, 2002, an ethical complaint was filed against Mr. Nichols by Lester Campbell. Mr. Campbell, a resident of Florida, retained Mr. Nichols in November of 2001 to settle the estate of Mr. Campbell's deceased father. At that time, Mr. Campbell paid a fee of $1,500.00. After Mr. Campbell retained Mr. Nichols, he returned to Florida believing that the estate would be probated and settled. However, on March 1, 2002, Mr. Campbell received a letter from the Fiduciary Supervisor of the Kanawha County Commission informing him that no paperwork had been filed to settle his father's estate. A

few days after receiving the letter, Mr. Campbell was able to reach Mr. Nichols by telephone. Mr. Nichols informed Mr. Campbell that all necessary paperwork had been filed. However, on June 7, 2002, Mr. Campbell contacted the Fiduciary Supervisor's office and learned that still no paperwork had been filed regarding his father's estate.

Consequently, Mr. Campbell returned to West Virginia on June 10, 2002, and filed all necessary papers to settle his father's estate. It took Mr. Campbell several days to locate and confront Mr. Nichols. According to Mr. Campbell, Mr. Nichols stated that he had filed all necessary paperwork for the estate and that he would obtain the copies thereof for Mr. Campbell. A few days after this meeting, Mr. Nichols met with Mr. Campbell and confessed that he had forgotten to file the papers. Mr. Campbell then demanded Mr. Nichols refund him the $1,500.00 fee he had paid him. Although, Mr. Nichols wrote a check to Mr. Campbell for this amount, he asked Mr. Campbell to hold the check for four days. Mr. Campbell waited for four days before attempting to cash the check; but there were insufficient funds to cover the check. For two consecutive days, Mr. Campbell attempted to cash the check. Each time the check was refused. Mr. Campbell ultimately returned to Florida.

## II.

### STANDARD OF REVIEW

[1, 2] The OLDC has invoked Rule 3.27 of the West Virginia Rules of Lawyer Disciplinary Procedure to seek the suspension of Mr. Nichols' law license.[5] This Court has

---

5. West Virginia Rule 3.27 of the Lawyer Disciplinary Procedure provides in full:

(a) Upon receipt of sufficient evidence demonstrating that a lawyer (1) has committed a violation of the Rules of Professional Conduct or is under a disability and (2) poses a substantial threat of irreparable harm to the public, the Office of Disciplinary Counsel shall conduct an immediate investigation.

(b) Upon completion of such investigation, the Office of Disciplinary Counsel shall promptly file a report with the Supreme Court of Appeals indicating whether, in the opinion of Disciplinary Counsel, the lawyer's commission of a violation of the Rules of Professional

Conduct or disability poses a substantial threat of irreparable harm to the public. The Office of Disciplinary Counsel shall attempt to provide reasonable notice to the lawyer prior to the filing of this report.

(c) Upon receipt of this report, the Supreme Court, upon determining the existence of good cause, shall provide notice of the charges to the lawyer with the right to a hearing in not less than thirty days before the Court. The Supreme Court may appoint a trustee to protect the interest of the lawyer's clients during the pendency of these proceedings. After such hearing, the Supreme Court may temporarily suspend the lawyer or may order such other action as it deems appropriate until underlying

recognized that "[t]he special procedures outlined in Rule 3.27 of the West Virginia Rules of Lawyer Disciplinary Procedure should only be utilized in the most extreme cases of lawyer misconduct." Syl. pt. 1, *Office of Disciplinary Counsel v. Battistelli*, 193 W.Va. 629, 457 S.E.2d 652 (1995). However, "[i]f the Court, after proceeding in accordance with West Virginia Rule of Lawyer Disciplinary Procedure 3.27(c), concludes that the respondent lawyer should be temporarily suspended, it will so order." Syl. pt. 3, in part, *Battistelli, id.* Furthermore, during our review of a proceeding initiated under Rule 3.27, "the Supreme Court of Appeals may suspend the license of a lawyer ... when there is evidence that a lawyer (1) has committed a violation of the Rules of Professional Conduct ... and (2) poses a substantial threat of irreparable harm to the public until the underlying disciplinary proceeding has been resolved." Syl. pt. 2, in part, *Committee on Legal Ethics of West Virginia State Bar v. Ikner*, 190 W.Va. 433, 438 S.E.2d 613 (1993). *Accord Battistelli*, 193 W.Va. at 636–37, 457 S.E.2d at 659–660. With these review procedures in mind, we proceed to consider the merits of the instant proceeding.

## III.

## DISCUSSION

### A. *Violation of the Rules of Professional Conduct*

In view of the facts set forth previously, we have little difficulty in finding that there is sufficient credible and unrefuted evidence to initially demonstrate that Mr. Nichols has violated numerous provisions of the Rules of Professional Conduct.[6] For example, allegations were made by the Boggesses and Mr. Cole which indicate Mr. Nichols repeatedly misrepresented that he filed lawsuits on their behalf. The OLDC has charged that this conduct violates Profession-

al Conduct Rule 8.4(c), which provides that "[i]t is professional misconduct for a lawyer to ... engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]" *See Lawyer Disciplinary Bd. v. Battistelli*, 206 W.Va. 197, 523 S.E.2d 257 (1999) (annulling attorney's license where one of the charges involved lying to a client about the status of a case). No evidence has been submitted by Mr. Nichols to refute the allegations that he lied to the Boggesses and to Mr. Cole regarding filing lawsuits on their behalf.

Evidence also exists which shows that Mr. Nichols failed to diligently and expeditiously pursue the legal claims of the Boggesses and Mr. Cole. Under Professional Conduct Rule 1.3, lawyers are expressly required to "act with reasonable diligence and promptness in representing a client." *See Lawyer Disciplinary Bd. v. Friend*, 200 W.Va. 368, 489 S.E.2d 750 (1997) (imposing two year suspension for violation of Rule 1.3).

### B. *Irreparable Harm to the Public*

This Court has also found that the OLDC has produced sufficient evidence to establish that Mr. Nichols poses a substantial threat of irreparable harm to the public while the underlying disciplinary proceedings are pending. While the charges filed by the Boggesses and Mr. Cole were pending, Mr. Nichols continued to engage in a pattern of misrepresentation involving other clients.

Mr. Nichols has been accused by Ms. Byrd, Mr. Jeffrey, Mrs. Clark, and Mr. Campbell of failing to file court documents on their behalf and misrepresenting to them that he had, in fact, filed the documents. Additionally, in the case of Mr. Campbell, Mr. Nichols has been accused of writing a worthless check. Finally, this Court is extremely disturbed by the fact that Mr. Nichols has failed to respond to this Court, in any manner, regarding the OLDC's petition to have his law license temporarily suspended.

It is clear to this Court that Mr. Nichols' conduct "has also worked serious harm on

---

disciplinary proceedings before the Lawyer Disciplinary Board have been completed.

(d) Unless otherwise provided, interim suspension of a lawyer pursuant to this rule shall take effect immediately upon entry of the order by the Supreme Court. A hearing on formal charges against the suspended lawyer shall be conducted by a Hearing Panel Subcommittee,

unless continued for good cause shown, within ninety days after the effective date of suspension.

6. We hasten to point out that in this proceeding we are not called upon to, nor do we, decide the merits of ethical violations pending against Mr. Nichols.

the profession." *Battistelli,* 193 W.Va. at 638, 457 S.E.2d at 661. We have recognized that "[c]ritical traits of a lawyer's character are honor and integrity." *Ikner,* 190 W.Va. at 437, 438 S.E.2d at 617. Mr. Nichols' conduct subsequent to the initiation of formal charges against him candidly illustrates his unwillingness to display honor and integrity in dealing with his clients. Consequently, we are compelled to suspend his law license pending the resolution of the ongoing disciplinary proceedings.

## IV.

## CONCLUSION

We hereby temporarily suspend Mr. Nichols' law license until the underlying disciplinary proceedings against him have concluded. We further conclude that the order entered by Chief Judge Stucky, appointing an attorney to oversee the affairs of Mr. Nichols' clients, shall remain in full force pending the outcome of all disciplinary proceedings.

The Clerk of this Court is directed to issue the mandate in this case forthwith.

Temporary Suspension of Law License.