IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2014 Term

No. 14-0348

FILED

May 28, 2014

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

OFFICE OF LAWYER DISCIPLINARY COUNSEL,
Petitioner

v.

MARK S. PLANTS, a member
of the West Virginia State Bar,
Respondent

Lawyer Disciplinary Proceeding

PETITION DENIED

Submitted: May 5, 2014
Filed: May 28, 2014

Joanne M. Vella Kirby, Esq.
Lawyer Disciplinary Counsel
Rachael L. Fletcher Cipoletti, Esq.
Chief Lawyer Disciplinary Counsel
Charleston, West Virginia
Counsel for Petitioner

Robert H. Davis, Jr
Davis Law
Harrisburg, Pennsylvania
Counsel for Respondent

The Opinion of the Court was delivered PER CURIAM.
JUSTICE BENJAMIN, deeming himself disqualified, did not participate in the decision
of this case.

SYLLABUS BY THE COURT

1. "The special procedures outlined in Rule 3.27 of the West Virginia Rules of Lawyer Disciplinary Procedure should only be utilized in the most extreme cases of lawyer misconduct." Syl. Pt. 1, *Office of Disciplinary Counsel v. Battistelli*, 193 W.Va. 629, 457 S.E.2d 652 (1995).

2. "If the Court, after proceeding in accordance with West Virginia Rule of Lawyer Disciplinary Procedure 3.27(c), concludes that the respondent lawyer should be temporarily suspended, it will so order." Syl. Pt. 3, in part, *Office of Disciplinary Counsel v. Battistelli*, 193 W.Va. 629, 457 S.E.2d 652 (1995).

3. "Given the practical difficulty of providing specific guidance on the instances where temporary suspension is appropriate, the Court will apply the two-part standard in West Virginia Rule of Lawyer Disciplinary Procedure 3.27 to each petition on a case-by-case basis." Syl. Pt. 4, *Office of Disciplinary Counsel v. Battistelli*, 193 W.Va. 629, 457 S.E.2d 652 (1995).

4. "Under the authority of the Supreme Court of Appeals' inherent power to supervise, regulate and control the practice of law in this State, the Supreme Court of

Appeals may suspend the license of a lawyer or may order such other actions as it deems appropriate, after providing the lawyer with notice and an opportunity to be heard, when there is evidence that a lawyer (1) has committed a violation of the Rules of Professional Conduct or is under a disability and (2) poses a substantial threat of irreparable harm to the public until the underlying disciplinary proceeding has been resolved." Syl. Pt. 2, *Comm. on Legal Ethics of the W.Va. State Bar v. Ikner*, 190 W.Va. 433, 438 S.E.2d 613 (1993).

5. "Ethical violations by a lawyer holding a public office are viewed as more egregious because of the betrayal of the public trust attached to the office." Syl. Pt. 3, *Comm. on Legal Ethics of W.Va. State Bar v. Roark*, 181 W.Va. 260, 382 S.E.2d 313 (1989).

Per Curiam:

The Office of Lawyer Disciplinary Counsel (hereinafter "ODC") filed an April 11, 2014, Petition with this Court pursuant to Rule 3.27 of the West Virginia Rules of Lawyer Disciplinary Procedure (hereinafter "Rule 3.27"). The ODC seeks the immediate suspension of the law license of Kanawha County, West Virginia, Prosecuting Attorney, Mark S. Plants (hereinafter "the Respondent") and/or the disqualification of the Respondent and the Kanawha County Prosecuting Attorney's Office from instituting and prosecuting allegations of domestic violence involving a parent or guardian and minor child.

Upon thorough review of the briefs, the record, arguments of counsel, and applicable precedent, this Court denies the ODC's request for immediate interim suspension of the Respondent's law license pending the resolution of disciplinary proceedings. Further, this Court finds that the April 23, 2014, Kanawha County Circuit Court order disqualifying the Respondent and the Office of Prosecuting Attorney of Kanawha County from certain types of cases and the April 24, 2014, order appointing Donald P. Morris as Chief Special Prosecutor provide sufficient protection from any substantial threat of irreparable harm to the public pending the resolution of disciplinary proceedings. Those circuit court orders should remain in full force and effect pending the outcome of the proceedings against the Respondent.

1

## I. Factual and Procedural History

On February 26, 2014, Allison Plants, the Respondent's ex-wife (hereinafter "Mrs. Plants"), contacted the West Virginia State Police and reported that the Respondent had caused injury to their eleven-year-old son by whipping him with a belt on February 22, 2014. On February 27, 2014, Mrs. Plants filed a domestic violence petition with the Magistrate Court of Kanawha County, and an emergency protective order was thereafter issued against the Respondent prohibiting contact with his children. Mrs. Plants thereafter alleged that the Respondent had engaged in impermissible contact with the children by talking to them in a parking lot on March 17, 2014, and the Respondent was subsequently charged with violation of the protective order.

On March 31, 2014, the Respondent was arrested for domestic battery, in violation of West Virginia Code § 61-2-28(a) (2010), as a result of the police investigation into Mrs. Plants' allegations. In his April 7, 2014, motion to dismiss, the Respondent asserted that he "was acting as a parent to discipline his child, therefore he was acting within a constitutionally protected right to control his child[.]" Further, the Respondent alleged that "under West Virginia law there is no liability from the reasonable use of corporal punishment for disciplinary purposes."

2

On April 11, 2014, the ODC filed a "Petition Seeking Immediate Suspension of Respondent and/or Disqualification of Respondent and the Kanawha County Prosecuting Attorney's Office from Instituting and Prosecuting Allegations of Domestic Violence Involving a Parent or Guardian and Minor Child" with this Court, alleging that Rule 3.27 [1]

---

[1]Rule 3.27 of the Rules of Lawyer Disciplinary Procedure, entitled "Extraordinary Proceedings," provides:

(a) Upon receipt of sufficient evidence demonstrating that a lawyer (1) has *committed a violation* of the Rules of Professional Conduct or is under a disability and (2) *poses a substantial threat of irreparable harm to the public*, the Office of Disciplinary Counsel shall conduct an immediate investigation.

(b) Upon completion of such investigation, the Office of Disciplinary Counsel shall promptly file a report with the Supreme Court of Appeals indicating whether, in the opinion of Disciplinary Counsel, the lawyer's commission of a violation of the Rules of Professional Conduct or disability *poses a substantial threat of irreparable harm to the public*. The Office of Disciplinary Counsel shall attempt to provide reasonable notice to the lawyer prior to the filing of this report.

(c) Upon receipt of this report, the Supreme Court, upon determining the existence of good cause, shall provide notice of the charges to the lawyer with the right to a hearing in not less than thirty days before the Court. The Supreme Court may appoint a trustee to protect the interest of the lawyer's clients during the pendency of these proceedings. After such hearing, the *Supreme Court may temporarily suspend the lawyer* or may order such other action as it deems appropriate until underlying disciplinary proceedings before the Lawyer Disciplinary Board have been completed.

(d) Unless otherwise provided, *interim suspension* of a

(continued...)

3

requires such suspension and/or disqualification based upon the Respondent's alleged violation of Rule 1.7 of the West Virginia Rules of Professional Conduct (hereinafter "Rule 1.7").[2]

In addition to the ODC's Petition, the City of Charleston and Charleston Police Department also filed a petition for writ of prohibition with the Circuit Court of Kanawha County on April 14, 2014, alleging that the Respondent should be disqualified and prohibited from prosecuting criminal matters pertaining to domestic violence between parents/guardians and minor children based upon the criminal charges against the Respondent. In response to that writ of prohibition, an amended agreed order was entered by the Circuit Court of

---

[1](...continued)

> lawyer pursuant to this rule shall take effect immediately upon entry of the order by the Supreme Court. A hearing on formal charges against the suspended lawyer shall be conducted by a Hearing Panel Subcommittee, unless continued for good cause shown, within ninety days after the effective date of suspension.

W.Va. R. Law. Disc. P. 3.27 (emphasis supplied).

[2]Rule 1.7(b) provides, in pertinent part:

> A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

> > (1) the lawyer reasonably believes the representation will not be adversely affected; and

> > (2) the client consents after consultation.

4

Kanawha County on April 23, 2014, as referenced above. According to that order, counsel for the parties "agreed that, for the sake of the integrity of the legal system, the welfare of minors, and the public's interest in the same, the Court should establish parameters for the Respondent and his office that will avoid the appearance of impropriety, conflicts of interest, and a compromised legal system." Thus, the circuit court found that "[i]t is in the public interest that child abuse and neglect, violent crimes against children by their parent, guardian, or custodian, and criminal violations of protective orders be prosecuted impartially without any appearance of impropriety." The circuit court recognized that the Respondent's assertions that his actions do not constitute domestic battery "appear to materially limit the ability of the Kanawha County Prosecuting Attorney's Office to properly prosecute certain cases . . . ."

Accordingly, the circuit court ordered as follows:

[T]he Respondent and his office shall not prosecute cases involving (1) crimes of violence by a parent, guardian, or custodian against a child; (2) abuse and neglect cases under Chapter 49 of the West Virginia Code; and (3) criminal violations of domestic violence protection orders as addressed in Chapter 48, Article 27 of the West Virginia Code.

The order disqualified the Respondent and the Office of Prosecuting Attorney of Kanawha County from prosecuting allegations involving those issues, finding that "the Respondent's duty to fairly prosecute these matters appears to be materially limited by the Respondent's interest in his own defense to the charges against him."

5

On the following day, April 24, 2014, the Circuit Court of Kanawha County entered another order appointing Donald P. Morris as Chief Special Prosecutor for the types of cases identified in the prior order of disqualification, including "(1) abuse and neglect matters; (2) crimes of violence by a parent, guardian, or custodian against a child; and (3) criminal violations of domestic violence protection orders." The circuit court also appointed Rocky Holmes, Amy Bird, and Adam Petry as Assistant Special Prosecutors of abuse and neglect cases or other matters to be assigned by Chief Special Prosecutor, Donald P. Morris. Citing West Virginia Code § 7-7-8 (2010)[3] as authority to appoint the special prosecutors, the circuit court further ordered that the "Assistant Special Prosecutors and their staff shall remain on their current payroll and maintain their current rate of pay, but shall no longer report to [the Respondent]" and that the Respondent is prohibited from "altering the employment, compensation, and benefits" of those prosecutors or their staff. By order dated April 30, 2014, the circuit court also appointed Deborah Kinder as a victim's advocate to support the special prosecuting attorney. Pursuant to that order, the victim's advocate is not to report to the Respondent.

This Court, by order dated April 22, 2014, found good cause pursuant to Rule

_____

[3]West Virginia Code § 7-7-8 authorizes a circuit court to appoint a competent practicing attorney to act when a "prosecuting attorney and his assistants are unable to act."

6

3.27(c) and, on May 5, 2014, this Court heard arguments from the ODC and the Respondent on the ODC's petition for suspension and/or disqualification.

## II. Standard of Review

The ODC has invoked Rule 3.27 to seek the immediate interim suspension of the Respondent's law license pending the resolution of disciplinary proceedings against him. This Court has recognized that "[t]he special procedures outlined in Rule 3.27 of the West Virginia Rules of Lawyer Disciplinary Procedure should only be utilized in the most *extreme cases* of lawyer misconduct." Syl. Pt. 1, *Office of Disciplinary Counsel v. Battistelli*, 193 W.Va. 629, 457 S.E.2d 652 (1995) (emphasis supplied). However, "[i]f the Court, after proceeding in accordance with West Virginia Rule of Lawyer Disciplinary Procedure 3.27(c), concludes that the respondent lawyer should be temporarily suspended, it will so order." Syl. Pt. 3, in part, *Battistelli*, 193 W.Va. at 630, 457 S.E.2d at 653. Furthermore, during this Court's review of a proceeding initiated under Rule 3.27, we are called upon to "determine whether there is sufficient evidence to conclude that the Respondent (1) has committed a violation of the Rules of Professional Conduct, and (2) *poses a substantial threat of irreparable harm to the public*." 193 W.Va. at 636-37, 457 S.E.2d at 659-60 (emphasis supplied); *see also* Syl. Pt. 2, *Comm. on Legal Ethics of W.Va. State Bar v. Ikner*, 190 W.Va. 433, 438 S.E.2d 613 (1993).

7

This Court has also recognized the unique nature of each particular factual scenario and stated as follows in syllabus point four of *Battistelli*: "Given the practical difficulty of providing specific guidance on the instances where temporary suspension is appropriate, the Court will apply the two-part standard in West Virginia Rule of Lawyer Disciplinary Procedure 3.27 to each petition on a case-by-case basis." 193 W.Va. at 630, 457 S.E.2d at 653. With these standards in mind, we proceed to consider the merits of the instant proceeding.

## III. Discussion

The issue before this Court is whether to temporarily suspend the Respondent's law license pending resolution of disciplinary proceedings against him and/or disqualify him from involvement in cases other than those from which he has already been disqualified as a result of the April 23, 2014, circuit court order. This Court has consistently held that it has the ultimate responsibility and authority for supervising the practice of law in West Virginia and for ensuring that the public interest is properly protected. In syllabus point two of *Ikner*, this Court held:

> Under the authority of the Supreme Court of Appeals' inherent power to supervise, regulate and control the practice of law in this State, the Supreme Court of Appeals may suspend the license of a lawyer or may order such other actions as it deems appropriate, after providing the lawyer with notice and an opportunity to be heard, when there is evidence that a lawyer (1) has committed a violation of the Rules of Professional Conduct or is under a disability and (2) *poses a substantial threat of*

8

> *irreparable harm to the public until the underlying disciplinary proceeding has been resolved.*

190 W.Va. at 434, 438 S.E.2d at 614 (emphasis supplied). This Court has further stated that "the primary purpose of the ethics committee [Office of Lawyer Disciplinary Counsel] is not punishment but rather the protection of the public and the reassurance of the public as to the reliability and integrity of attorneys." *Id.* at 436, 438 S.E.2d at 616 (internal citations omitted).

Rule 3.27 provides a mechanism for the temporary interim suspension of an attorney's license to practice law, pending the resolution of disciplinary charges against him. We have repeatedly emphasized that this is an extraordinary measure to be utilized *only* in extreme cases where a substantial threat of irreparable harm to the public exists. As a preliminary matter, it is imperative to identify what this case is *not*. It is not a typical disciplinary matter in which this Court determines the ultimate discipline to be imposed upon an attorney *after* a complete and thorough hearing and the submission of recommendations by the Lawyer Disciplinary Board. This matter has not yet been developed in that fashion. Instead, it is a very narrow question and a direct assessment of whether the Respondent poses a substantial threat of irreparable harm *to the public*[4] such that his law license must be subject

---

[4]The standard of "substantial threat of irreparable harm to the public" is rather amorphous and requires some degree of speculation, dependent upon the facts of each case. As noted in a dissent to *Tapp v. Ligon*, 2013 WL 3106222 (Ark. 2013),

(continued...)

9

to interim suspension pending a full hearing and resolution of disciplinary proceedings against him.

The ODC contends that the Respondent should not be permitted to retain his license to practice law pending resolution of disciplinary proceedings against him and further maintains that his continued possession of a law license would pose a substantial threat of irreparable harm to the public. Specifically, the ODC argues that the Respondent, by asserting that he did not commit domestic battery, has created a conflict of interest in violation of Rule 1.7 "involving his own interests that materially limits his ability to execute properly his duties as the elected Prosecuting Attorney." The ODC thus contends that suspension of the Respondent is necessary for the protection of the public and that his continued representation of the State of West Virginia, "while facing criminal charges of having committed a domestic battery himself and having violated an Emergency Protective

---

[4](...continued)
> Equally problematic is how to determine when the "public" is injured or faces injury. In almost every instance of attorney misconduct, save for those in which an entire client trust account is looted, only a single party is directly affected by an attorney's misconduct. Accordingly, with the exception of financial malfeasance, it is blatant speculation to project an attorney's unethical conduct beyond the harm actually caused to the affected party.

*Id.* at *8, Justice Hart dissenting. Thus, the dissent continues, the standard "purports to protect an entity that is not defined, and may not even exist in any practical, tangible sense." *Id.*

Order, poses a substantial threat of irreparable harm to the public in that it undermines the integrity and impartiality of our system of justice." The ODC summarizes its position as follows:

> In essence, by maintaining that he was acting within a constitutionally protected right to discipline his child by striking him with a belt, and therefore, is not guilty of having violated West Virginia Code § 61-2-28(a), Respondent is asserting that the aforementioned criminal statute is unconstitutional insofar as it relates to parents or guardians having violated it if they were merely exercising their constitutional right to "control" their child.

With regard to the existence of the April 23, 2014, circuit court order disqualifying the Respondent from specific types of cases, the ODC contends that the Respondent's continued service "in any capacity during the pendency of the underlying disciplinary proceedings" is inappropriate. The ODC maintains that the circuit court's disqualification order is not sufficient to protect the public and that the disqualification issue is separate and distinct from the disciplinary issue. *See State ex rel. Clifford v. W.Va. Office of Disciplinary Counsel*, 231 W.Va. 334, 745 S.E.2d 225 (2013) (holding that ODC could bring disciplinary action against attorney based upon alleged conflict of interest, even though circuit court determined that no conflict existed).

In contrast, the Respondent argues that further action by this Court is unnecessary pending resolution of disciplinary proceedings against him because the actions

11

already taken by the circuit court in disqualifying him from involvement in certain types of cases are sufficient to protect the public interest. According to the Respondent, the circuit court orders effectively screen the Respondent and the Office of Prosecuting Attorney from any case that might reasonably raise a public concern regarding objectivity and diligence. Moreover, the Respondent argues that other examples of utilization of Rule 3.27 to temporarily suspend a law license pending the resolution of disciplinary proceedings have involved more egregious fact patterns, significant ethical violations, and substantial threats of irreparable harm to the public. He contends that the nature of this case does not "justify imposition of the extreme sanction of a suspension from practice. . . ."

This Court's review of prior cases in which Rule 3.27 has been employed to justify temporary suspension reveals the magnitude of the ethical violations and threat of irreparable public harm typically involved in such cases. In *Office of Lawyer Disciplinary Counsel v. Albers*, 214 W.Va. 11, 585 S.E.2d 11 (2003), for instance, this Court examined the circumstances of lawyer misconduct and the fact that the attorney was serving a one-year jail term and awaiting possible indictment on another felony matter. *Id.* at 12, 585 S.E.2d at 12. In *Albers*, we emphasized that suspension pending disciplinary proceedings is an extraordinary measure, and we found that immediate and temporary suspension was warranted under those circumstances. *Id*. at 14, 585 S.E.2d at 14.

12

Similarly, in *Office of Lawyer Disciplinary Counsel v. Nichols*, 212 W.Va. 318, 570 S.E.2d 577 (2002), the ODC's petition for temporary suspension pending the outcome of ongoing disciplinary proceedings was granted based upon the attorney's apparent misrepresentations to former clients regarding the status of lawsuits purportedly filed on their behalf and his conduct subsequent to initiation of formal charges against him. *Id*. at 322, 570 S.E.2d at 581. While disciplinary charges filed by two clients were pending, Mr. Nichols continued to engage in a pattern of misrepresentation with regard to other client matters. Additionally, this Court stated that it was "extremely disturbed by the fact that Mr. Nichols has failed to respond to this Court, in any manner, regarding the . . . [ODC's] petition to have his law license temporarily suspended." *Id*. at 321, 570 S.E.2d at 580. We found that "Mr. Nichols' conduct subsequent to the initiation of formal charges against him candidly illustrates his unwillingness to display honor and integrity in dealing with his clients." *Id*.

Complete abandonment of an attorney's practice and his disappearance were considered sufficient to justify a Rule 3.27 suspension in *Office of Lawyer Disciplinary Counsel v. Butcher*, 197 W.Va. 162, 475 S.E.2d 162 (1996). In that case, this Court found that Mr. Butcher posed a substantial threat of irreparable harm to his clients and to public confidence in legal system. *Id.* at 166, 475 S.E.2d at 166. He had been provided with notice and an opportunity to be heard regarding disciplinary proceedings, but he had refused both. *Id*. at 165, 475 S.E.2d at 165.

13

In *Battistelli*, the attorney had obtained unsecured loans from clients and deceived disciplinary counsel and the Court. 193 W.Va. at 637, 457 S.E.2d at 660. We found that temporary suspension was warranted pending the outcome of disciplinary proceedings based upon the threat the attorney posed to the public. We explained that the attorney's "pattern of deceitful activity jeopardizes the relationship with his clients and their ultimate success in pending litigation. Further, and more importantly, his continuing dishonesty in this Court and perhaps other tribunals affects the appropriate administration of justice." *Id.* at 638, 457 S.E.2d at 661.

This Court's review of those various other instances of utilization of Rule 3.27 to warrant immediate suspension pending resolution of disciplinary action reveals that this Court premised its conclusions upon an attorney's specific acts and the resultant impact upon the public. Aggravated situations such as incarceration, engagement in unfair loan transactions with clients, misrepresentations to disciplinary counsel, and abandonment of a law practice were found to justify the extreme measures of Rule 3.27 because the substantial threat of harm to the public continued unabated.

In contrast, the instant case presents a situation in which a prosecuting attorney is accused of criminal violations, and the ODC contends that his defense to those charges creates a conflict of interest between his personal interests and his duties to act as a

14

prosecutor.[5] Key to this analysis is the April 23, 2014, circuit court order disqualifying the Respondent from involvement in certain types of cases and the degree to which that preventive measure insulates the public from potential harm. While the ODC correctly asserts that discipline is separate and distinct from disqualification, it must be recognized that we are not entertaining a question of final discipline here. We are deciding whether immediate interim suspension is warranted *pending* an ultimate resolution of the disciplinary issue, and that inquiry must necessarily involve an evaluation of the efficacy of the framework currently in place to guard against irreparable harm to the public. Hence, reference to the circuit court's disqualification order is absolutely essential to our determination of whether sufficient disqualification has already been accomplished.

The ODC also maintains that the circuit court's order disqualifying the Respondent from certain types of cases is insufficient, and it emphasizes the heightened standard to be applied to public officials based upon the position of public trust they occupy.

---

[5]West Virginia Code § 7-4-1 (2010) addresses the duties of a prosecuting attorney and provides, in pertinent part:

> It shall be the duty of the prosecuting attorney to attend to the criminal business of the State in the county in which he is elected and qualified, and when he has information of the violation of any penal law committed within such county, he shall institute and prosecute all necessary and proper proceedings against the offender, and may in such case issue or cause to be issued a summons for any witness he may deem material.

15

Within the realm of imposing a disciplinary sanction, this Court has been cognizant of that elevated standard, explaining as follows in syllabus point three of *Committee on Legal Ethics of West Virginia State Bar v. Roark*, 181 W.Va. 260, 382 S.E.2d 313 (1989): "Ethical violations by a lawyer holding a public office are viewed as more egregious because of the betrayal of the public trust attached to the office."[6]

We are acutely aware that the Respondent in the case sub judice occupies a position of public trust and must be held to a heightened standard of ethical behavior. That heightened standard certainly governs the ultimate imposition of sanctions, if such sanctions are determined to be warranted. The instant proceeding, however, does not encompass a determination of sanctions to be imposed upon the Respondent. It is for the more limited purpose of deciding whether Rule 3.27 requires temporary interim suspension *pending* resolution of disciplinary proceedings. Thus, we must analyze the alleged violation of Rule

---

[6]Mr. Roark, a former prosecuting attorney and former mayor, was suspended for three years after pleading guilty to six counts of the federal misdemeanor offense of possession of cocaine. 181 W.Va. at 261-62, 382 S.E.2d at 314-15; *see also Comm. on Legal Ethics of the W.Va. State Bar v. White*, 189 W.Va. 135, 428 S.E.2d 556 (1993) (lawyer/prosecuting attorney was suspended for two years after pleading guilty to possession of cocaine); *Comm. on Legal Ethics of the W.Va. State Bar v. Boettner*, 188 W.Va. 1, 422 S.E.2d 478 (1992) (lawyer/state senator was suspended for two years after pleading guilty to evading payment of federal income taxes); *Comm. on Legal Ethics of W.Va. State Bar v. Grubb*, 187 W.Va. 608, 420 S.E.2d 744 (1992) (lawyer/judge was disciplined with license annulment after being convicted of criminal charges in federal court); *Comm. on Legal Ethics of the W.Va. State Bar v. Moore*, 186 W.Va. 127, 411 S.E.2d 452 (1991) (lawyer pled guilty to criminal acts that arose through his position as governor and was disciplined by license annulment).

1.7 and the claim of a substantial threat of irreparable harm to the public based not only upon the Respondent's heightened standard of ethical conduct but also in light of the April 23, 2014, circuit court order which disqualified the Respondent and the Office of Prosecuting Attorney from prosecuting cases involving crimes of violence by a parent, guardian, or custodian against a child; abuse and neglect cases; and criminal violations of domestic violence protection orders.

This Court is not persuaded by the ODC's contention that the conflict of interest extends to cases beyond those identified areas. We fail to discern a substantial threat of irreparable harm to the public occasioned by the Respondent's retention of his law license *pending* the resolution of disciplinary proceedings against him, even in light of the Respondent's position of public trust and heightened standard of ethical conduct. The circuit court orders achieved a result that effectively protects the public from the substantial threat of irreparable harm and is consistent with the standards previously articulated by statute and this Court. In particular, West Virginia Code § 7-7-8, cited above, recognizes the potential for disqualification of prosecutors in certain instances and provides that replacement prosecutors are to be appointed.

Likewise, the circuit court orders are consistent with this Court's contemplation of general standards dealing with prosecutorial disqualification, as identified in *Keenan v.*

17

*Hatcher*, 210 W.Va. 307, 557 S.E.2d 361 (2001) (addressing issue of disqualification of prosecutor's office from participating in recidivist proceeding, based upon fact that prosecutor and assistant had previously acted as defendant's counsel); *see also Kutsch v. Broadwater,* 185 W.Va. 6, 404 S.E.2d 249 (1991) (holding recusal not warranted for conflict of interest arising out of attorney's dual membership on staff of prosecutor's office and law firm where attorney resigned from prosecutor's office); Syl. Pt. 4, in part, *State v. Knight*, 168 W.Va. 615, 616, 285 S.E.2d 401, 403 (1981) ("Under circumstances where it can reasonably be inferred that the prosecuting attorney has an interest in the outcome of a criminal prosecution beyond ordinary dedication to his duty to see that justice is done, the prosecuting attorney should be disqualified from prosecuting the case.").

The circuit court properly removed the Respondent from any cases involving subject matter similar to the criminal charges currently pending against him and extinguished the threat of potential conflict of interest. This conclusion regarding the adequacy of the degree of disqualification already accomplished and the absence of justification for immediate interim suspension pending the resolution of disciplinary proceedings is also supported by principles encompassed within the decisions of other jurisdictions addressing similar requests. As one commentator has observed,

> Several competing policies are at work when thinking about whether and when to impose an interim suspension pending final disposition on a lawyer whose conduct is the subject of a disciplinary or capacity inquiry. On the one hand,

18

the lawyer regulatory system owes a duty to protect the public from lawyer misconduct, misconduct that may well continue throughout the often lengthy disciplinary process. On the other hand, even an interim suspension is a drastic remedy.

Arthur F. Greenbaum, *Administrative and Interim Suspensions in the Lawyer Regulatory Process - A Preliminary Inquiry*, 47 Akron L. Rev. 65, 105 (2014) (footnote omitted). It is illustrative to note that Rule 20 of the American Bar Association's Model Rules for Lawyer Disciplinary Enforcement addresses this issue and premises interim suspensions on a showing that the lawyer "poses a substantial threat of serious harm to the public." Model Rule for Lawyer Disciplinary Enforcement R. 20 (2002).[7] With the harm to the public prevailing as a pivotal component of these evaluations, many courts have endeavored to address the various facets of the inquiry in terms of the particular threat. As the Supreme Judicial Court of Massachusetts noted: "Because of the substantial and likely harm that would arise from a temporary suspension that later proves to have been entered improvidently, [the Massachusetts rule] requires that there be a showing of a threat of future

---

[7]The commentary to that model rule provides:

> Certain misconduct poses such an immediate threat to the public and the administration of justice that the lawyer should be suspended from the practice of law immediately pending a final determination of the ultimate discipline to be imposed. Interim suspension is also appropriate when the lawyer's continuing conduct is causing or is likely to cause serious injury to a client or the public, as, for example, where a lawyer abandons the practice of law or is engaged in an ongoing conversion of trust funds.

19

harm that in the public interest must be guarded against by a temporary suspension." *In re Ellis*, 680 N.E.2d 1154, 1161-62 (Mass. 1997).

As noted by Greenbaum, "[i]n balancing the need for public protection against the costs suspensions entail, each state must determine the severity of the threat and the certainty of its occurrence necessary to support interim relief." Greenbaum, *supra* at 106.[8] Further, Greenbaum explains:

---

[8]Greenbaum further notes: "The current ABA model has two points of emphasis: (1) the threat of harm must be 'substantial,' and (2) the potential harm must be 'serious.'" Greenbuam, *supra* at 106. Greenbaum explains that this language represents a slight deviation from prior language requiring the threat of harm to be substantial and the harm to be "irreparable." *See* MRLDE R. 20 (1989). The "irreparable" harm requirement is included in the West Virginia rule, as quoted above. Greenbaum also references several other states' approaches, as follows:

> For example, as to the likelihood of occurrence, Pennsylvania's rule, at least on its face, tightens the "substantial threat" standard by limiting the interim suspension to instances in which the lawyer's continued practice "is causing immediate or substantial public or private harm." New Mexico tempers this somewhat, requiring a finding that the lawyer's conduct "will result in a substantial probability of harm, loss or damage to the public." Similarly, Oregon provides for interim suspension when disciplinary authorities can show that the lawyer's continued practice "will, or is likely to, result in substantial harm to any person or the public at large." New York seems to fall somewhere in between. That state's rule focuses on situations where continued practice by the lawyer is "immediately threatening the public interest."

Greenbaum, *supra* at 106-07 (footnotes omitted).

20

> Regardless of the exact standard employed, the statutes and case law provide guidance on the types of misconduct that have been found to warrant interim suspension. Some forms of conduct, in and of themselves, seem particularly likely to be repeated and hence often raise a substantial risk of public harm. High among them is misappropriation or admitted failure to pay money owed to a client, such as failure to pay fee arbitration awards. Disappearance and/or abandonment of law practice also pose an obvious threat.

*Id.* at 111-12 (footnotes omitted).

In evaluating serious ethical violations by an attorney and a request for immediate suspension due to threat of public harm in *In re Reiner's Case*, 883 A.2d 315 (N.H. 2005), the Supreme Court of New Hampshire noted the absence of a threat of public harm, reasoning as follows:

> The allegations here, while serious, do not pose a threat to the respondent's present and future clients. There are no allegations that the respondent has misused clients' funds, made false statements or engaged in other conduct which poses an immediate threat to clients or to the public. Nor was any additional evidence offered either to corroborate or supplement the allegations or to show that the respondent poses a threat to the public. Accordingly, we find that suspension is not necessary for the protection of the public. *See* Sup. Ct. R. 37(16)(f).

883 A.2d at 319.[9]

---

[9]*Reiner's Case* was decided under a rule allowing the Supreme Court of New Hampshire to "suspend attorneys or disbar New Hampshire licensed attorneys or publicly censure attorneys upon such terms and conditions as the court deems necessary for the protection of the public and the preservation of the integrity of the legal profession." N.H.

(continued...)

Similarly, in *Disciplinary Counsel v. Hanson*, 2006 WL 2349162 (Conn. Super. 2006), the disciplinary counsel requested an interim suspension of an attorney, arguing that criminal charges pending against the criminal defense lawyer created a per se conflict of interest that interfered with his duty of loyalty and violated Rule 1.7 of the Rules of Professional Conduct. The Superior Court of Connecticut held that evidence was insufficient to establish that the attorney posed a substantial threat of irreparable harm[10] to his clients or to prospective clients. 2006 WL 2349162 at *4. In reviewing the issue, the court found that criminal matters were "not for this court to decide" and found no reason to suspend the attorney's law license pending resolution of disciplinary proceedings. *Id.* at *1.[11]

---

[9](...continued)
Sup. Ct. R. 37(16)(f).

[10]*Hanson* was decided under Connecticut Practice Book § 2-42(b) (1998), providing in relevant part:

> The court, after hearing, pending final disposition of the disciplinary proceeding, may, if it finds that the lawyer poses a substantial threat of irreparable harm to his or her clients or to prospective clients, enter an order of interim suspension, or may order such other interim action as deemed appropriate.

[11]The *Hanson* court also reasoned:

> The problem with creating a per se rule that an arrest and pending charges against a criminal defense lawyer should result in an automatic interim suspension is that it simply sweeps too broadly and ignores the risk faced by lawyers of unfounded arrests and charges by disgruntled and/or vindictive clients or

(continued...)

We are mindful of the gravity of the fact that the Respondent is facing criminal charges. Such charges will be addressed in due course, and the ODC may proceed with disciplinary charges against the Respondent as deemed necessary. The issues will be thoroughly presented and evaluated in future proceedings, and the Respondent will have ample opportunity to defend against these charges. At this time and in this proceeding, we express no opinion upon the merits or the ultimate disposition of the proceedings in either the criminal or disciplinary forums.

As explained above, the issues for this Court in the present proceeding are strictly limited to whether the Respondent's law license should be temporarily suspended pending resolution of disciplinary charges and whether additional disqualification is necessary. In addressing those questions, this Court has examined the ODC's contentions, and we do not find a substantial threat of irreparable harm to the public where the Respondent and the prosecutor's office have been removed from all matters involving crimes of violence by a parent, guardian, or custodian against a child; abuse and neglect cases; and criminal violations of domestic violence protection orders. The potential for a Rule 1.7 conflict of interest has been adequately and reasonably resolved by the April 23, 2014, circuit

---

[11](...continued)
> opponents, notwithstanding the probable cause requirement for an arrest. That is why a case by case *rather than a per se rule* makes sense.

2006 WL 2349162, at *4.

court order; the criminal charges remain pending; and the disciplinary actions against the Respondent will proceed as deemed necessary.

## IV. Conclusion

For the foregoing reasons, this Court finds that interim suspension pending the resolution of disciplinary proceedings is not warranted and further disqualification is unnecessary. The ODC's request is accordingly denied. Due to the expense of maintaining a special prosecutor during the pendency of these actions, the proceedings against the Respondent should continue toward resolution as expeditiously as possible.

Petition Denied.

The Clerk of this Court is directed to issue the mandate in this case forthwith.